# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF TEXAS

ROBERT C. WESOLEK,                             §

     Plaintiff,


     v.                                                            Civil Action No:_____


PACIFIC HUNT ENERGY CORP,

A CANADIAN CORPORATION

     Defendant


## PLANITIFF'S ORIGINAL COMPLAINT

To the Honorable United States District Judge:

     NOW COMES ROBERT C. WESOLEK, Plaintiff herein, to file his Plaintiff's Original   Complaint against Pacific Hunt Energy Corp, a Canadian Corporation, named Defendant herein  seeking this Court to award  judgment against Defendant for damages suffered for breach of contract and/or for alternate relief; and in support of Plaintiff's complaint, Plaintiff would respectfully submit to the Court as follows:

## I.       PARTIES

     1.       Plaintiff Robert C. Wesolek (hereinafter sometimes referred to as "Wesolek") is a citizen of the United States of America  residing in Houston, Texas.  Plaintiff brings suit on his behalf and for his benefit.  The Plaintiff brings this breach of contract action based on Defendant's failure to perform under the contract between himself and Defendant Pacific Hunt Energy Corp.; and, alternatively, based upon fraud by Defendant's  misrepresentations and quantum meruit for payment due for services rendered. Plaintiff may be served with pleadings and notices through the undersigned attorney.

2.      Defendant Pacific Hunt Energy Corp (hereinafter sometimes referred to as "PHEC") is a Canadian corporation in good standing under the laws of British Columbia with its registry offices located at the 25th floor, 666 Burrard Street, Vancouver, British Columbia V6C 2X8, Canada (the "Registry office"). Defendant Pacific Hunt Energy Corporation may be served at its Registry Office.

## II.  JURISDICTION & VENUE

3.      The U.S. District Court has original jurisdiction of this civil action pursuant to 28 U.S.C. sect. 1332 (a) in that the damages incurred by Plaintiff are in excess of $75,000.00 and is between a US citizen and a corporation of a foreign state.

4.      Venue is proper before this Court in that the parties hereto contractually agreed to venue in Houston, Harris County, Texas.

## III.     FACTS

5.      Defendant herein, Pacific Hunt Energy Corp, was incorporated in Canada under the Business Corporation Act of British Columbia on April 7, 2011.

6.      PHEC was founded for the purpose of acquiring and developing oil and gas in Asia.

7.      One hundred percent (100%) of the stock of PHEC was owned by approximately eighty (80) shareholders.

8.      Plaintiff Wesolek's relationship with PHEC began under oral agreement wherein Plaintiff Wesolek provided financial, accounting and management services to assist PHEC in its corporate structuring and in its acquisition of oil and gas assets.

9.      Plaintiff Wesolek and Defendant PHEC formalized their relationship by entering into a written personal services agreement on July 7, 2013 but to be effective July 1, 2013 (sometimes hereinafter referred to as the "1st PSA"). Please see a copy of the 1st PSA marked Exhibit "A", attached hereto and thereby made a part hereof for all intents and purposes.

10.     Plaintiff Wesolek, on July 7, 2013, accepted the positions of Chief Financial Officer, Director and Secretary of PHEC.  On March 23, 2015, Wesolek was appointed Chief Executive Officer and President PHEC.

11.     Pacific Hunt Energy Limited is a Singapore company formed on September 13, 2012 under the Corporate Regulatory Authority of Singapore, the Companies Act (sometimes hereinafter

referred to as "PHEL").

12.     PHEL issued one hundred percent (100.0%) of its then issued outstanding shares to PHEC, thereby making PHEL a wholly owned subsidiary of PHEC.  PHEC was then parent company to its wholly owned subsidiary and the two entities comprise the Pacific Hunt Energy Group of companies.

13.     PHEL was formed to facilitate beneficial tax treatment for revenue generated by PHEC's oil and gas properties in Asia.

14.     Plaintiff Wesolek was appointed to serve as Chief Financial Officer of PHEL and he served in that capacity from July 7, 2013 through December 15, 2019.  Plaintiff Wesolek was also elected as a Director of PHEL on February 24, 2014. Please see Exhibit marked "B," attached hereto and thereby made a part hereof for all intents and purposes.

15.     During August 2013, The Republic of the Union of Myanmar ("Myanmar") invited bids and proposals from interested parties to develop oil and gas production on properties owned and controlled by the government of Myanmar.

16.     PHEC, under the direction of a small executive team which included Plaintiff Wesolek, sought to be selected by Myanmar to enter into production sharing contracts (hereinafter "PSA") wherein revenues from the production of oil and gas owned or controlled by Myanmar would be shared between, among others, Myanmar and PHEC.

17.     Plaintiff Wesolek prepared PHEC's response to Myanmar's request for proposals (the "RFP").  PHEC was successful in securing two (2) PSCs with Myanmar.  Plaintiff Wesolek was also in large part responsible for drafting and negotiating the PSC's joint operating agreements and all ancillary supporting documentation relating to the acquisition of the PSCs.

18.     PHEC was awarded the PSCs by Myanmar in November of 2013, after lengthy negotiations and the settlement of complex administrative issues, the PSC's were executed September 5, 2014.  The PSCs are owned by Pacific Hunt Energy Corp and comprise the primary asset base of Pacific Hunt Energy Corp and the Pacific Hunt Energy Group of companies.  The PSCs provide exploration rights to hydrocarbons under two (2) tracts of land composing 10.6 million surface acres.  The PSCs total in excess of 140 pages in length and therefor are not included as a part of this Original Complaint.

19.     Plaintiff Wesolek resigned from the board of directors of PHEL on December 18, 2014 once the PSAs had been secured but retained his position as Chief Financial Officer of PHEL.

20.     On June 26, 2017, in a meeting of the board of directors of PHEC and PHEL, it was decided that PHEL would maintain the day-to-day operations of the PSCs; as such, it was recognized that a Singapore based operations team would be required.   Defendant and PHEL requested that Plaintiff Wesolek move permanently to Singapore to help facilitate those operations.  Plaintiff Wesolek informed the directors of PHEC and PHEL that he could not, for personal reasons, move permanently to Singapore. Additionally, Plaintiff Wesolek informed the directors of PHEC and PHEL that he would need to resign from their boards and the corporate offices if he was required to move permanently to Singapore. Plaintiff Wesolek offered to continue to provide his services to assist in the eventual selection and establishment of a new Singapore based executive team.  Please see Exhibit  marked "C", attached hereto and thereby made a part hereof for all intents and purposes.

21.     In or around January of 2018 the board of directors of PHEC and PHEL concluded that the cost of exploration and development relating to the PSCs was beyond their financial strength and that a public offering of PHEL shares (hereafter referred to as the "IPO") might best secure the needed financing.  In the course of deciding to pursue the IPO certain directors of PHEC made exploratory visits to the London Office of Stifel Nicolaus Europe Limited (hereafter "Stifel") to investigate the possibility of the IPO.  As a result of this investigation, the Boards of PHEC and PHEL determined that the completion of the reorganization of PHEC and PHEL in preparation for the IPO would require the reorganization of the Pacific Hunt Energy Group of companies and the completion of a  broad array of highly technical tasks.  The IPO required a commitment of long work hours and international travel by Plaintiff.  The necessity of continuity of the key management of PHEC and PHEL was imperative due to the complexity of the corporate reorganization and IPO transactions required to bring the IPO to market.  Plaintiff Wesolek, after much discussion among the board members concerning his deep experience in the public equity market and the information necessary for the forthcoming offering, was asked to delay his resignation to oversee the corporate reorganization and the documentation of the IPO.

22.     Plaintiff Wesolek, during the months of February and March of 2018, held one-on-one discussions with fellow board members of PHEC and PHEL to negotiate the terms and conditions under which he would agree to remain with PHEC and PHEL and undertake the time-consuming tasks required in connection with putting the IPO together.

23.     As consideration for Plaintiff not resigning from PHEC and PHEL and for managing the planned IPO and related corporate restructuring , it was agreed that Plaintiff Wesolek would:

    a. not to resign but continue to serve in his existing corporate capacities;
    b. assist in searching, securing and training a new CFO as his replacement; and
    c. manage the planned IPO of PHEL to market.

In exchange for that commitment by Plaintiff Wesolek PHEC and PHEL Plaintiff Wesolek would:

    a. not be required to move permanently to Singapore;
    b. would receive a new personal services agreement with PHEL (the "2nd PSA") as a follow-up to the 1st PS with PHEC") paying Plaintiff Wesolek a monthly lump sum of $22,000.00 for a period of at least a twelve (12) months; and
    c. would continue to fully participate in any subsequent bonus or stock option plan offered to the directors and officers of PHEC and PHEL.

24.     Plaintiff Wesolek, but for the contractual agreements set forth above in paragraph 23 hereof, the consideration for the commitments and agreements between Plaintiff Wesolek and PHEC and PHEL, would have resigned from PHEC and PHEL and from managing the IPO and related corporate restructuring.  It was agreed between Plaintiff Wesolek and the Directors of  PHEC and PHEL that, for the agreed consideration given to Wesolek as set forth above in paragraph 23, he would not resign his positions with PHEC and PHEL and would continue his activities for the entities including aiding in the development of an IPO for PHEL.  But for this consideration, Plaintiff Wesolek would have resigned from his positions in both PHEC and PHEL.  Please see a copy of the Board of Director' s meeting of PHEL held on the 19 day of September,  2018, marked Exhibit "D", attached hereto and thereby made a part hereof for all intents and purposes.

25.     During the months of March and April 2018, PHEC's and PHEL's plans for an IPO with Stifel  began to solidify.  In order to facilitate the IPO of PHEL shares, PHEC and PHEL would need to

reorganize in such a manner that PHEL would become the parent company of Pacific Hunt Energy Corp; thereby making PHEC a wholly owned subsidiary of PHEL. During April and May of 2018 Plaintiff Wesolek explored alternative strategies by which that reorganization could be accomplished. Plaintiff Wesolek concluded in May of 2018 that seeking the Canadian court's approval of a plan of arrangement (the "Plan of Arrangement") would provide the most effective approach to restructuring the Pacific Hunt Energy Group for its IPO.

26.    The Plan of Arrangement required PHEL to acquire all of the issued and outstanding shares from the individual shareholders of PHEC. There would be no change in the ultimate equity position of each shareholder as a result of effecting the Plan of Arrangement. Plaintiff Wesolek was primarily responsible for the creation and implementation of the Plan of Arrangement. The Plan of Arrangement was approved by the directors of PHEC on June 21, 2018 and by the PHEC shareholders in a reconvened special meeting of shareholders held August 8. 2018. Corporate minutes documenting the approval of directors and shareholders of PHEC. Please see Exhibits "E" and "F", attached hereto and thereby made by made a part hereof for all purposes and intents.

27.    The successful Plan of Arrangement was submitted to the Supreme Court of British Columbia, and approved by that honorable Court on the 29th day of August of 2018. A copy of the final Order approving the Plan of Arrangement is marked Exhibit "G", and thereby made a part hereof for all intents and purposes.

28.    Upon approval of the Plan of Arrangement PHEC became a wholly owned subsidiary of PHEL. Subsequent to the Plan of Arrangement, PHEC retained control and ownership of the Myanmar PSCs.

29.    PHEL received its initial service proposal for the IPO from Stifel and began negotiations to engage Stifel as sole broker and nominated advisor with respect to the IPO on May 4, 2018.

30.    During the period beginning in May through December of 2018, the demand for Plaintiff Wesolek's services and travel escalated dramatically. Plaintiff Wesolek expended great time and efforts And utilized his great expertise in the pursuit of PHEL's IPO. Plaintiff Wesolek was the person primarily responsible for the coordination, production and management of professional activities and supervision of the PHEC and PHEL personnel required in the production of documents relating to the

legal, accounting, audit and regulatory elements required to accomplish the IPO. The minutes of PHEL's Board of Director's meeting set forth the importance of Plaintiff Wesolek's activities and the anticipated benefits to be received by PHEC and PHEL and their directors and shareholders. Please see Exhibit "I" attached hereto and a made a part hereof for all intents and purposes.

31.     In the meeting of the Board of Directors of PHEL held on September 19, 2018, Directors Grant Peterson and Sindhu were authorized to reduce to writing their oral agreement previously committed to Plaintiff Wesolek that if he would not resigning his positions in PHEC and PHEL but continuing in said positions and guiding the production of the IPO. Please see a copy of the PHEL Board of Directors meeting held September 19, 2018, marked Exhibit "D", and attached hereto and thereby made a part hereof for all intents and purposes. Additionally , please see paragraphs 21, 22, 23, 24 and 25 above.

32.     PHEL, by its own admission, recognized Plaintiff Wesolek as a member of the Board of Directors of PHEC during the period of 2017 through 2018. As such Plaintiff was thereby eligible to receive a cash bonus ("the Cash Bonus") as approved in the minutes of the Board of Director's meeting held October 12, 2018 along with PHEL's approval of its commitment to provide Plaintiff Wesolek and other Directors with additional compensation. A part of the minutes of that meeting reads as follows:

> "Jim Ebeling acknowledged Jeff's email regarding recommended compensation for the Board of Directors for their services from 2017 up to the IPO. The board discussed the optics of share and option grants just prior to the IPO. Jim made an alternative proposal using the median board remuneration for AIM listed companies and proposed that the nine board members that had served on either Pacific Hunt Energy Corporation ("PHEC") or Pacific Hunt Energy Limited boards during the period from 2016 thru 2018, plus Royston Chia, be given the option to receive USD 40,000 or USD 50,000 equivalent value of shares of PHEL stock at theIPO valuation as remuneration for  their services ("Bonus Award"). After some discussion Manish made a motion to accept Jim's  proposal which was seconded by Dev and was approved unanimously".

The meeting of the Board of Directors of Pacific Hunt Energy Limited of October 12, 2018 reaffirmed the promises and commitments it had previously made to Plaintiff Wesolek to induce him to remain with PHEC and PHEL and manage their efforts with respect to the IPO and the required restructuring of PHEC and PHEL. Please see the minutes of that October 12, 2018 Board of Directors meeting attached here to as Exhibit "H", and made a part hereof for all intents and purposes.

33. PHEL's Managing Director, Grant Peterson, on o about the 15th day of  October of 2019, completed negotiations with Plaintiff Wesolek for his 2nd PSA setting forth therein Plaintiff Wesolek's monthly

personal services fee of $22,000.00 plus the right to share equally in any future bonus option plan ("Bonus Option Plan"). Plaintiff Wesolek's 2nd PSA was to become effective upon the resignation of Plaintiff Wesolek as Chief Financial Officer of PHEL. A copy of Plaintiff Wesolek's 2nd PSA is marked Exhibit "I", and attached hereto and thereby made a part hereof for all intents and purposes.

34.     Again, in June of 2019 PHEL, in its Board of Directors meeting, reaffirmed its commitment to award Plaintiff Wesolek a cash bonus compensation in item 1.1 its circulated draft "Notice of Extraordinary General Meeting" (the "Extraordinary General Meeting"). The Notice of Extraordinary General Meeting was circulated under the guidance of directors and officers representing PHEL's majority shareholder which had the ability, in that capacity, to authorize such bonus compensation. Please see the "Notice of Extraordinary General Meeting", (item 1(A) with the "Register of Directors and Officers" which is attached hereto and marked Exhibit "J", and thereby made a part hereof for all intentions and purposes.

35.     Plaintiff Wesolek successfully completed the reorganizations of PHEC and PHEL in August/September 2018 and diligently pursued efforts on the IPO. Please see the IPO memorandum of Pacific Hunt Energy, marked Exhibit "K", attached hereto and thereby made a part hereof. Stifel tested the market for the Offering thereafter.

36.     During November/December 2018 the IPO was temporarily placed on hold due to the instability of the London financial markets which resulted from the United Kingdom's decision to exit the European Common Market. Additionally, London market enthusiasm began to weaken as a result of the volatility in the global energy sector.

37.     Plaintiff Wesolek successfully performed his executive duties diligently in accordance in with the terms and conditions of both his 1st PSA and 2nd PSA and the directives of the boards of directors of PHEC and PHEL.

38. Defendant has failed and refused to pay the arrearages due and owing to Plaintiff on his 1st PSA. Plaintiff provided invoices each month to Defendant which were not always paid in full. Plaintiff agreed to defer part of the amounts due at certain times, but kept and provided a record of the arrearage to Defendant.

39.     PHEC, on February 13, 2020, gave written thirty (30) day written notice (the "Termination Notice") to Plaintiff Wesolek that PHEC was terminating its 1st PSA with Plaintiff Wesolek. The Termination

Notice terminating the 1st PSA marked Exhibit "L" is attached hereto and thereby made a part of this petition for all intents and purposes.

40.   Defendant PHEC's Termination Notice in paragraph 6 again sets venue for this suit in Houston, Texas. Please see Exhibit "L", attached hereto and thereby made a part hereof for all intents and purposes.

41.   Plaintiff Wesolek served under his written Personal Agreement with Pacific Hunt Energy Corp until the Personal Service Agreement was termination effective March 14, 2020.

42.   Plaintiff Wesolek continues to serve under his 2nd PSC, but there are outstanding amounts due and owing under the term of the agreement.

43.   Plaintiff Wesolek continues to serve as Director, President, Chief Executive Officer and Secretary of Pacific Hunt Energy Corp.

## COUNT 1: BREACH OF CONTRACT

44.   Plaintiff realleges and incorporates by reference the preceding "Facts" in the preceding paragraphs 5-43 for all intentions and purposes the same as if set herein verbatim.

45.   On the 7th day of July, 2013 Plaintiff Wesolek and Defendant PHEC entered into a valid and enforceable written personal service contract, the"1st PSA", a copy of which marked Exhibit "A." The 1st PSA requires Plaintiff Wesolek to serve as Defendant PHEC's ". . .Chief Financial Officer and Principal Accounting Officer. Accordingly, I shall undertake the regular duties associated with those positions and shall perform such services as may be directed from time to time by the Company's Board of Directors . . . . ." Plaintiff Wesolek was to be paid monthly for his billings as "Fees for my services will be charged at an hourly rate ranging from USD $175.00 to USD $275.00. I anticipate that my normal blended rate will be USD $220.00 per hour." The 1st PSA was in effect from July 1, 2013 and "could be terminated by either party upon thirty( 30) day written notice."

46.   Defendant PHEC, as of November 15, 2018, owed Plaintiff $80,485.00 in outstanding unpaid billed fees and $8,236.54 in unpaid travel expenses making an outstanding total indebtedness of $88,721.21 as of that date.

47.   Plaintiff received a second personal services contract from PHEL on or about October 15, 2018, the "2nd PSC". Please see Exhibit "I". The 2nd PSA was entered into and was effective November

16, 2018 and will terminate November 15, 2020.  The 2nd PSA was not an hourly rate contract but paid Plaintiff Wesolek a monthly fee of $22,000.00.  The monthly fee was  selected instead of the previous used hourly rate billing system in order reduce the financial expense of Plaintiff Wesolek to Defendant PHEC and PHEL.  Additionally, the 2nd PSA set forth that Petitioner Wesolek would share in any future "Bonus Plan" of PHEL.  Under the 2nd PHA Defendant PHEC and PHEL owed Plaintiff Wesolek the sum of $418,000.00 for his services through June 15, 2020.

48.        The total owed Plaintiff Wesolek by PHEC and PHEL under 1st PSA and 2nd PSA as of June 15, 2020 is $506,721.21.  Further, on the 15th day of November 2020, the expiration of the 2nd PSA, Defendant PHEC and PHEL will owe Plaintiff Wesolek an additional $110,000.00.  Additionally, the board of directors of PHEL voted Plaintiff Wesolek a Cash Bonus of $40,000.00.  See attached Exhibit "J" and "M", the PHEL Board of Directors Extraordinary General Meeting minutes.  The total outstanding indebtedness presently due and owing to Plaintiff by Defendant PHEC and PHEL under the 1st and 2nd PSCs, including the Cash Bonus, assuming no interim payments are made, is the amount of $546,721.21.  Upon maturity of the 2nd PSC Defendant PHEC will owe Plaintiff Wesolek the total sum of $656,721.21.

49.        Plaintiff received written notice dated February 13, 2020 that his 1st PSA was being Terminated after the expiration of 30 days.  Therefore, the 1st PSA terminated March 14, 2020.

50.        Plaintiff Wesolek fully performed all of his contractual obligations to Defendant PHEC and PHEL under both the 1st PSA and 2nd PSA and is entitled to be paid the consideration set forth in the agreements discussed herein.

51.        For Defendant PHEC's breach of its contract with Plaintiff, Plaintiff seeks liquidated damages of at least $656,721.21, which is within the jurisdictional limits of this Honorable Court.

52.        Defendant PHEC breached its 1st PSA by failing to pay Plaintiff Wesolek the balance Owed to him under the 1st PSA and the USD $40,000 Cash Bonus.  Additionally, Defendant PHEC and PHEL breached its 2nd PSA by failing to pay Plaintiff Wesloek  the contract amount of $528,000; thereby, making a total debt owed Plaintiff of $616,71.21.

53.        Plaintiff Wesolek is entitled to recover reasonable and necessary attorney fees under Chapter 38 of the Texas Civil Practice & Remedies Code because this is a suit for breach of a written contract.  Plaintiff Wesolek has had to  retain counsel to represent him in enforcing Plaintiff's contracts with Defendant PHEC.  Demand for payment of Plaintiff's claim has been made and presented to

Defendant PHEC's duly authorized agent.

54.      Plaintiff also seeks prepetition and post-petition interest for the amount due through date of judgment and post judgment interest on any judgment rendered in this cause.

### COUNT 2.  FRAUD BY MISREPRESENTATION

55.      Plaintiff Wesolek alleges and incorporates by reference the preceding "Facts" in paragraphs 5 through 46 herein the same as if they were set forth herein verbatim.

56.      In the alternative to Count 1, Plaintiff Wesolek asserts that Defendant PHEC and PHEL intentionally made him false promises, including, but not limited to, the payment of substantial consideration to induce him to continue perform and to complete valuable work for the benefit of Defendant PHEC and  PHEL.  Defendant PHEC repeatedly assured Plaintiff that he would be paid the consideration for the services he was rendering and the expenses he was incurring.

57.      Plaintiff Wesolek justifiably relied on Defendant PHEC's false promises of the consideration he expected to receive as set forth in the 1st PSA and 2nd PSA and in reliance thereon continued to provide Defendant PHEC and PHEL valuable services. Defendant PHEC and PHEL now deny the validity of the 2nd PSC they entered into with Plaintiff Wesolek, the PSC by which his work was instrumental in restructuring the entities and the difficult pursuit of the IPO.

58.      On June 26, 2017, the Directors of PHEC and PHEL inquired of Plaintiff Wesolek if he would move permanently to Singapore to manage PHEC and PHEL direct and manage an initial investment offering for shares of PHEL, the IPO.  Plaintiff Wesolek informed the Board of Directors of both Defendant PHEC and PHEL that, for personal reasons, he could not permanently move to Singapore; however, he would, if an agreement could be reached, continue in his existing management of both PHEC and PHEL along with overseeing the development and proposed marketing of the IPO until a new chief financial officer for PHEL  could be retained and trained.  Plaintiff Wesolek,, in undertaking this new commitment, was promised a new personal services contract from Defendant PHEC and  PHEL; i.e, the 2nd PSa. Furthermore he believed the representation  that he would share equally in all share options or bonus as part of his continuing work.   The terms of the new agreement were agreed to by all parties.

59.      At a September 19, 2018  Board of Directors meeting of PHEL the Board acknowledged the work completed by Plaintiff Wesolek for Defendant PHEL and Defendant PHEC and instructed

Directors Peterson and Sindhu to complete Plaintiff Wesolek's new personal services contract, the 2nd PSC. Please see Exhibit "D", attached hereto.

60.      Plaintiff Wesolek performed the work related to the IPO and supporting the marketing with Stifel as agreed.   Please see Exhibit "K", the "Offering Memorandum").

61.      Plaintiff Wesolek, based on the representations of Defendant PHEC and PHEL, decided not to resign from the corporate offices he occupied in Defendant PHEC and PHEL so he could undertake corporate reorganization required to go forward with the IPO.  He also undertook the work to develop the IPO, just as he had agreed to do.  The representations of Defendant PHEC and PHEL on which he relied in undertaking the afore described services were as follows:

   a.   that he would receive a new personal services contract, the 2nd PSA for at least one year with monthly compensation of $22,000.00; and
   b.   full and equal participation in any future Bonus Plan.

62.      Defendant PHEC and PHEL violated Texas Business & Commerce Code section 27.01, which is the basis of this second count of this suit, with actual awareness of the falsity of Defendant's promises, thereby entitling Plaintiff to exemplary damages under section 27.01(c).

63.      Plaintiff Wesolek is entitled to recover reasonable and necessary attorney fees, expert witness fees, costs of court, and cost for copies of depositions under Texas Business & Commerce Code § 27.01(e).

64.      Defendant PHEC and PHEL's representations to Plaintiff were false promises to Plaintiff Wesolek.

65.      Defendant PHEC and PHEL intended for Plaintiff Wesolek to rely on its false statements and promises of compensation as set forth in the 2nd PSC and as directed by the Board of Directors of PHEC and PHEL.

66.      Plaintiff Wesolek justifiably relied on Defendant PHEC's and PHEL's false representations and promises.

67.      Defendant PHEC and PHEL made false statements and promises directly and proximately caused injury to Plaintiff Wesolek.  Defendant PHEC and PHEL caused Plaintiff Wesolek to suffer liquidated damages in the amount of  $656,721.21.

## COUNT 3. **QUANTUM MERUIT**

68.     Plaintiff Wesolek alleges and incorporates by reference the preceding "Facts" in the Preceding paragraphs 5 through 43 for all intents and purposes the same as if they were set forth herein verbatim.

69.     In the alternative to Counts 1 and 2, Defendant PHEC and PHEL accepted services and material from Plaintiff Wesolek without compensating Plaintiff Wesolek. Plaintiff Wesolek created and provided to Defendant PHEC and PHEL the following valuable services and material which benefited and provided great value to PHEC and PHEL:

a. continued services as CFO for Defendant PHEC and PHEL;

b.     complete corporation reorganization of both Defendant PHEC and PHEL;

c.     approval of the reorganization plan ("Plan of Arrangement") by the Supreme Court of British Columbia, Canada on the 29th day of August of 2018; and as instructed,

d. legal, accounting and financial data required to implement an IPO by Stifel.

70.     Plaintiff provided these valuable services to Defendant PHEC and PHEL and Defendant accepted these valuable services and material knowing Plaintiff Wesolek had been promised payment.

71.     Defendant PHEC and PHEL accepted these valuable services and material without full payment to Plaintiff knowing that Plaintiff Wesolek expected the complete compensation to which he was entitled when Defendant PHEC and PHEL accepted these valuable services and material.

72.      Because Plaintiff expected full compensation, Defendant PHEC and PHEL's acceptance of the valuable goods and services without payment resulted in in liquidated damages to Plaintiff Wesoleck in the amount of $656,721.21.

73.     Plaintiff Wesolek is entitled to recover reasonable attorney's fees under Texas Civil Practice and Remedies Code section 38.001(1)-(3) because this suit is for quantum meruit. Plaintiff retained counsel who presented Plaintiff Wesolek's claim to Defendant PHEC and PHEL,s agent in writing. Defendant PHEC did not tender the amount owed within 30 days of when the claim was presented.

## JURY DEMAND

74.     Plaintiff Wesolek demands a jury trial of the serviced tenders he appropriate fee with this Plaintiff's Original Complaint.

## PRAYER

WHEREFORE, PREMISES CONSIDERED and for the reasons set forth hereinabove, Plaintiff Robert C. Wesolek asks this Honorable Court to issue citation for Defendant Pacific Hunt Energy Corp to appear and answer, and that Plaintiff Wesolek be awarded a judgment against Defendant Pacific Hunt Energy Corp for the following:

a.  Actual general damages in the amount of $656,721.21;
b.  Prejudgment and post judgment interest.
c.  Costs of Court.
d.  Attorney fees which are reasonable and necessary.

Respectfully submitted,

Marilee A. Madan, Esquire

Tx. Bar No. 12789100

Jeffery L. Lagow, Esquire

Tx. Bar No. 11820500

5485 Belt Line Road, Ste. 290

Dallas, Tx . 75254

Phone: 832-689-8919

Email: Jefflagow@gmail.com

Fax: 469-726-3818