United States District Court
Southern District of Texas

**ENTERED**

August 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Robert C. Wesolek, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action H-20-2537 |
| | § | |
| Pacific Hunt Energy Corporation | § | |
| and Pacific Hunt Energy Limited, | § | |
| Defendants. | § | |

## Report and Recommendation

Robert C. Wesolek sued Pacific Hunt Energy Corporation (PHEC) on July 17, 2020, alleging breach of two personal service contracts (PSAs) and alleging, in the alternative, fraud and quantum meruit. (D.E. 1.) Wesolek filed an amended complaint (D.E. 18) [hereinafter FAC], adding factual allegations and naming Pacific Hunt Energy Limited (PHEL) as a defendant. PHEC filed a motion to dismiss the breach of contract claims in part and to dismiss the fraud and quantum-meruit claims in their entirety. (D.E. 21.) PHEL joined PHEC's motion. (D.E. 35.) The court recommends that the motion to partially dismiss the amended complaint be granted in part and denied in part.

### 1. Background

PHEC and PHEL are related companies that were formed "for the purpose of acquiring and developing oil and gas in Asia." (FAC ¶ 6–7, 12.) Wesolek began working for PHEC under an oral agreement to "provide[] financial, accounting and management services to assist PHEC in its corporate structuring and in its acquisition of oil and gas assets." *Id.* ¶ 8. In July 2013, Wesolek and PHEC entered a written PSA (1st PSA) by which Wesolek became PHEC's chief financial officer (CFO), principal accounting officer, director, and secretary. *Id.* ¶¶ 9–10, 54–55. In the years that followed, Wesolek also served as PHEC's chief executive officer and president and PHEL's CFO and director. *Id.* ¶¶ 10, 14.

Wesolek worked as part of an executive team on bids and proposals that led to production sharing contracts (PSCs) with the Republic of the Union of Myanmar for the development of oil and gas production on the government's properties. (FAC ¶¶ 15–18.) After the PSCs with Myanmar were secured, Wesolek resigned from PHEL's board of directors but retained his position as PHEL's CFO. *Id.* ¶¶ 18– 19. In June 2017, PHEC and PHEL relocated their day-to-day operations to Singapore to implement the PSCs. *Id.* at ¶ 20. Wesolek declined to move to Singapore but continued to provide contractual work for PHEC. *Id.* ¶¶ 20–21.

PHEC and PHEL pursued an initial public offering (IPO) of PHEC's shares to secure financing to develop the PSCs. (FAC ¶¶ 22– 26.) Wesolek agreed not to resign and to work on developing PHEC's IPO. *Id.* ¶ 22. He "assumed the new responsibilities immediately while negotiating the terms and condition[s] of the new agreement [(2d PSA)]." *Id.* Wesolek "held one-on-one discussions with fellow board members of PHEC and PHEL . . . to negotiate the terms and conditions under which he would agree to remain with PHEC and PHEL[.]" *Id.* ¶ 27. According to Wesolek, he agreed: (1) "not to resign but continue to serve in his existing corporate capacities;" (2) to "assist in searching, securing and training a new CFO as his replacement;" and (3) to "manage the planned IPO of PHEC to market." *Id.* ¶ 28. In exchange, PHEC and PHEL agreed: (1) not to require Wesolek to move permanently to Singapore; (2) to execute a PSA between Wesolek and PHEC paying Wesolek $22,000 per month for at least twelve months; and (3) to allow Wesolek "to fully participate in any subsequent bonus or stock option plan offered to the directors and officers of PHEC and PHEL." *Id.*

In early 2018, Wesolek worked on the reorganization of PHEC and PHEL in preparation for the IPO. (FAC ¶ 30.) "Wesolek was the person primarily responsible for the coordination, production and management of professional activities and supervision of PHEC and PHEL personnel required in the production of documents relating to the legal, accounting, audit and regulatory elements required to accomplish the IPO." *Id.* ¶ 35.

At a PHEL board of directors meeting in September 2018, the board discussed Wesolek's "[c]onsultancy [a]greement" and noted his "pivotal role leading up to the IPO." (D.E. 18-1 at 36.) Two directors were tasked with deciding the terms of Wesolek's consultancy agreement. *Id.*

At a PHEC board of directors meeting in October 2018, a cash bonus of "USD 40,000 or USD 50,000 equivalent value of shares of PHEL stock at the IPO valuation as remuneration for . . . services" was approved as compensation for the directors, which included Wesolek. (FAC ¶ 37.) A few days after that meeting, PHEL's managing director, Grant Peterson, and Wesolek completed negotiation of the 2d PSA. *Id.* ¶ 38. Peterson signed a handwritten note that stated, "PHE [sic] agrees to pay Robert Wesolek $22,000 USD per month for the next 2 year[s] plus expenses and a[n] agreed upon option plan[.]" (D.E. 18-1 at 94.)

In early 2019, "Wesolek successfully completed a significant portion of the corporate reorganization of PHEC and PHEL . . . and diligently . . . pursued efforts on the IPO." (FAC ¶ 41.) Wesolek continued as CFO of PHEC through January 15, 2020. *Id.* ¶ 44. Wesolek provided monthly invoices for his services under the 1st and 2d PSAs, "which were not always paid in full." *Id.* ¶ 45. On February 13, 2020, PHEC provided a thirty-day notice of termination of the 1st PSA. *Id.* ¶ 46. Wesolek provided services under the 2d PSA until it expired on November 15, 2020. *Id.* ¶ 50.

On July 17, 2020, Wesolek sued PHEC and PHEL, alleging breach of the two PSAs. (D.E. 1.) In the alternative, Wesolek raised claims of fraud and quantum meruit. *Id.* Wesolek attached twelve exhibits to the complaint, including board meeting minutes. *Id.* On August 14, 2020, PHEC filed a motion to partially dismiss Wesolek's breach of contract claims and to dismiss the fraud and quantum-meruit claims. (D.E. 7.) At the initial conference, the court granted Wesolek's request for leave to amend the complaint and instructed him to address the issues that PHEC had raised in its first motion to dismiss. (D.E. 13 at 2; D.E. 15.) With the consent of the parties, the court denied the pending motion to dismiss as moot. (D.E. 15.)

3

Wesolek's amended complaint added factual allegations in support of the same causes of action originally pleaded. (D.E. 18.) Wesolek also named PHEL as a defendant and attached four additional exhibits. *Id.* PHEC filed a second motion to dismiss the amended complaint for essentially the same reasons raised in the first motion. (D.E. 21.) On April 30, 2021, PHEL filed a motion for partial dismissal, incorporating PHEC's second motion in its entirety. (D.E. 35.) Wesolek filed a response, and PHEC filed a reply (D.E. 27; D.E. 28.)

2. *Standard of Review*

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Twombly*, 550 U.S. at 556. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]" *Id.*

Courts accept "all well-pleaded facts as true" and "view[] them in the light most favorable to the plaintiff." *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations

must be enough to raise a right to relief above the speculative level." *Allen*, 907 F.3d at 177 (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the court must limit itself to: (1) the facts in the complaint; (2) documents attached to the complaint; and (3) matters of which the court may take judicial notice. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The court has discretion to consider "any documents attached to the complaint[] and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### 3. Analysis

Defendants move to dismiss the breach of contract claims related to the 2d PSA and the cash bonus, the fraud claim, and the quantum-meruit claim.

#### A. Breach of Contract

Defendants argue that the 2d PSA is unenforceable because it did not comply with the statute of frauds and that Wesolek has failed to plead facts showing the existence of a valid contract on the cash bonus.

"In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.— Houston [1st Dist.] 2001, no pet.)). Duration, compensation, and the employee's duties are generally considered essential elements of an employment contract. *Conner v. Lavaca Hosp. Dist.*, 267 F.3d 426, 433 (5th Cir. 2001).

An agreement that "is not to be performed within one year" of the date on which it was made is not enforceable unless it is in writing and signed by the person committed to perform or by someone

authorized to sign for that person. Tex. Bus. & Comm. Code Ann. § 26.01. "[T]o satisfy the statute of frauds, 'there must be a written memorandum which is complete within itself in every material detail[] and which contains all of the essential elements of the agreement, so that the contract can be ascertained from the writings without resorting to oral testimony.'" *Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 727 (Tex. 2020) (quoting *Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978)). The written memorandum need not be a single document but may be comprised of multiple documents, which may include minutes of board meetings. *Id.* (quoting *City of Houston v. Williams*, 353 S.W.3d 128, 137 (Tex. 2011)); *Conner*, 267 F.3d at 432. This is true even if the multiple writings were executed at different times and do not expressly refer to each other. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000).

Wesolek alleges that he and Defendants entered into a valid, written contract that memorialized the duration, the compensation, and the duties covered by the 2d PSA. The court concludes that, while the first amended complaint is not a model of clarity, it alleges enough facts to survive a motion to dismiss. The court does not understand Wesolek to have attached every document constituting the writings that make up the 2d PSA. Construing the complaint in the light most favorable to Wesolek, the allegations in the complaint, supported by attached, corroborating documents, show that Wesolek had a two-year contract to consult on the IPO in exchange for a salary, reimbursement of expenses, and share in a bonus plan. Wesolek has stated plausible grounds to infer that Wesolek entered an enforceable employment contract with Defendants.

Again, at this stage, Wesolek does not have to prove his case; he only has to set out facts that state a plausible claim for relief and open the door to discovery. *See Twombly*, 550 U.S. at 556 (stating that plausible grounds, not probability, is all that is required at the pleading stage and that that all that is necessary is enough facts to raise a reasonable expectation that discovery will reveal supporting

evidence); *cf. Iqbal*, 556 U.S. at 678–79 (stating that conclusions alone "do[] not unlock the doors of discovery"). To be clear, the court's ruling here does not prevent Defendants from raising these same arguments in a summary judgment motion, when the record has been fully developed and the court can examine all documentary evidence of the alleged 2d PSA.

Because the court finds that Wesolek's pleading sufficiently alleges that his 2d PSA satisfied the statute of frauds, the court does not reach the parties' dispute about the partial performance exception to the statute of frauds. Also, the court does not reach Defendants' argument that Wesolek failed to state a claim for breach of the "cash bonus" agreement because Wesolek alleges that participation in the bonus plan was part of the compensation under the 2d PSA, not a separate contract.

## B. Fraud by Misrepresentation

Defendants argue that Wesolek's fraud claim fails under Rule 9(b) because he has not specified by speaker, time, or place the statements that were fraudulent or why any statement was knowingly false when made. Defendants also argue that Wesolek failed to state a claim for fraud because he did not allege any recoverable damages.

Although complaints generally need only contain a "short and plain statement of the claim[,]" allegations of fraud require a more specialized pleading. Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fifth Circuit precedent requires a plaintiff claiming fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

"The elements of common law fraud under Texas law are (1) a material misrepresentation; (2) that is false; (3) made with knowledge of its falsity or recklessness as to its truth; (4) made with the intention

that it should be acted upon by another party; (5) relied upon by the other party, and (6) causing injury." *Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 212. To sufficiently plead a defendant's fraudulent intent, a plaintiff must give specific facts that support an inference of fraud. *Id.* at 213 (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 565 (5th Cir. 2002)); *see Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (explaining that the intent element "requires more than a simple allegation that a defendant had fraudulent intent"). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

The amended complaint alleges in a conclusory fashion that the promises Defendants allegedly made in the 2d PSA were misrepresentations. (FAC ¶¶ 80–82.) Wesolek states no facts to indicate that those statements were false when made. *Id.* ¶ 82. In his response brief, Wesolek argues that "the promise of payment of substantial consideration to induce him to continue to perform and to complete valuable work for the benefit of [PHEC] and PHEL" was a misrepresentation. (D.E. 27 at 9.)

Wesolek cannot satisfy Rule 9(b) with conclusory, nonspecific allegations. *See Flaherty & Crumrine Preferred Income Fund, Inc.*, 565 F.3d at 207. Because Wesolek fails to identify the speaker and the time and place of each alleged misrepresentation or any circumstances constituting fraud, he fails to satisfy Rule 9(b). *See id.* To the extent that Wesolek seeks to have the court infer fraudulent intent from Defendants' alleged ultimate breach of the 2d PSA, the court declines the invitation. To make that logical leap would transform every breach of contract case into a fraud claim.

The court granted Wesolek an opportunity to amend and instructed him to address the arguments raised in PHEC's first motion to dismiss, which included the failure to comply with Rule 9(b). It appears that Wesolek cannot plead fraud with the specificity required,

and thus any additional opportunity to amend would be futile. Moreover, Wesolek's pleading states only conclusory allegations on the elements of Defendants' knowledge of falsity, their intent that Wesolek act upon the alleged misrepresentations, and Wesolek's reliance on the statement. Wesolek has not pleaded enough facts to state a plausible claim for relief for fraud under Rule 12(b)(6). *See Iqbal*, 556 U.S. at 678–79 (stating that "a plaintiff armed with nothing more than conclusions" does not satisfy the Rule 8 pleading standard).

As the court finds that the fraud claim should be dismissed for the reasons discussed without regard to the damages alleged, the court does not address Defendants' argument that Wesolek failed to plead damages recoverable under fraud.

### C. Quantum Meruit

Defendants argue that Wesolek cannot recover under quantum meruit if a valid contract applies or if services were provided within the scope of an employment agreement.

Quantum meruit is an equitable remedy used to prevent a party's unjust enrichment. *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018). "To recover under a quantum-meruit claim, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by [that person]; and (4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged." *Id.* at 732–33. "A party generally cannot recover under a quantum-meruit claim when there is a valid contract covering the services or materials furnished." *Id.* at 733.

Wesolek sufficiently pleaded facts to assert a plausible claim for relief under the doctrine of quantum meruit in the alternative to the breach of contract claims. Wesolek alleges that he agreed to perform valuable services for PHEC and PHEL in the form of preparing to

9

market PHEC's IPO and that he provided those services, including completely reorganizing PHEC and PHEL's corporate structure. (FAC ¶ 98.) Wesolek alleges that Defendants agreed to pay him a set amount of money for these services but, despite accepting and benefitting from his work, never remitted the promised payment. *Id.* ¶¶ 45, 98–100. Because Wesolek provided monthly invoices for his services, Defendants were on notice that he expected to be paid as agreed. *Id.* ¶ 45. Accepting these facts as true for the purpose of the motion to dismiss, the court finds that Wesolek has sufficiently pleaded the equitable remedy of quantum meruit.

While recovery under a quantum-meruit theory is barred when a valid contract covers the goods or services rendered, a plaintiff may nevertheless plead both theories in the alternative. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). Wesolek's quantum-meruit claim will come into play only if he fails to establish the claims for breaches of the PSAs. *See Stanley Indus. of S. Fla., Inc. v. J.C. Penney Co.*, Civil Action No. 3:05-CV-2499-L, 2006 WL 2432309, at *8 (N.D. Tex. Aug. 18, 2006) (finding a claim for quantum meruit sufficient as an alternative remedy where plaintiff alleged that defendant refused plaintiff's shipment of goods despite their agreement to exchange goods for payment).

*4. Conclusion*

For the reasons explained above, the court recommends that Defendants' motions to dismiss (D.E. 21; D.E. 35) be granted as to Wesolek's fraud claim and denied as to Wesolek's contract and quantum-meruit claims.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on August 10, 2021.

Peter Bray
United States Magistrate Judge